1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney
2   JOANN M. SWANSON (CABN 88143)
    Chief, Civil Division
3   NEILL T. TSENG (CABN 220348)
    Assistant United States Attorney
4
5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
        Telephone: (415) 436-7155
6       FAX: (415) 436-6748
        neill.tseng@usdoj.gov
7
    Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                    OAKLAND DIVISION
11
12  OUR CHILDREN'S EARTH              )    No. C 08-01461 SBA
    FOUNDATION, a non-profit corporation, )  **E-FILING CASE**
13                                     )
                    Plaintiff,         )    **DEFENDANTS'  ORDER GRANTING**
14                                     )    **MOTION TO TRANSFER VENUE TO**
                    v.                 )    **THE DISTRICT OF HAWAII**
15  U.S. ENVIRONMENTAL PROTECTION     )
    AGENCY, STEVEN L. JOHNSON, as      )
16  Administrator of the United States )    Date: July 29, 2008
    Environmental Protection Agency, and )  Time: 1:00 p.m.
17  WAYNE NASTRI as Regional           )    Place: Courtroom 3, 3rd Floor
    Administrator of the United States )    Honorable Saundra Brown Armstrong
18  Environmental Protection Agency,   )
                                       )
19                                     )
                    Defendants.        )
20  _____)

21  **I.  INTRODUCTION.**

22       On July 29, 2008, this court considered argument on Defendants' Motion to Transfer

23  Venue to the District of Hawaii (the "Motion").  Having considered the Motion, Defendants'

24  memorandum of points and authorities in support of the motion, Plaintiff's memorandum in

25  opposition to the motion, Defendants' reply brief in support of the Motion, the evidence before

26  the court, and the arguments of the parties, the court hereby GRANTS Defendants' Motion to

27  Transfer Venue to the District of Hawaii and ORDERS the clerk of court to transfer this case to

28  the District of Hawaii.

    **II.  STATEMENT OF FACTS.**

The United States, on behalf of USEPA, and the State of Hawaii, on behalf of the Hawaii Department of Health ("HDOH") filed suit against Honolulu in October 1994 to address violations of the Federal Water Pollution Control Act, 33 U.S.C § 1251 et seq. (more commonly known as the Clean Water Act or CWA), and Hawaii's equivalent State law, H.R.S. Chapter 342D (the "1994 lawsuit").  The complaint in the 1994 lawsuit alleged, inter alia, that Honolulu had failed to adequately operate and maintain its sewage collection system, resulting in a substantial number of discharges of raw sewage (commonly referred to as "sanitary sewer overflows" or "SSOs").[1]   The complaint in the 1994 lawsuit is attached as Exhibit 1 to Declaration of Hugh Barroll.  The parties settled the 1994 lawsuit in 1995 with the entry of a Consent Decree ("1995 Consent Decree").  Exhibit 2 to Declaration of Hugh Barroll.  Among other things, the 1995 Consent Decree required Honolulu to undertake a 25 year program to improve its sewage collection system.  1995 Consent Decree ¶ XXV.D.   The 1995 Consent Decree remains in effect.  Declaration of Hugh Barroll at ¶ 3.  The District Court has retained jurisdiction over the 1994 lawsuit to enforce the terms and conditions of the 1995 Consent Decree.  1995 Consent Decree ¶ XXIV.

Honolulu failed to fully comply with the 1995 Consent Decree, and has continued to operate its wastewater treatment and collection system in violation of the Clean Water Act. Among other responses to the continued noncompliance, HDOH issued an administrative order to Honolulu requiring it to take action to improve performance of its sewer force mains and USEPA issued a series of administrative orders to address noncompliance at Honolulu's main sewage treatment plants (commonly referred to as the Sand Island Treatment Plant and the Honouliuli Treatment Plant).  Declaration of Hugh Barroll at ¶ 5.

---

[1]  The "sewage collection system" is a complex network of sewer pipes, force mains and sewage pump stations.  In a sewage collection system, most sewers flow by gravity to low points in a collection system.  To reach a wastewater treatment plant, sewage must be collected from these low points at pump stations.  Pump stations pump sewage into force mains which lift sewage out of these low points to higher places where the sewage can again flow downhill. Sewage collection systems are vulnerable to failures if overtaxed by excessive flows or if allowed to deteriorate due to age or improper maintenance.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1    During 2004 and 2005, USEPA, with the assistance of HDOH, undertook a

2    comprehensive assessment of Honolulu's sewage collection system to evaluate Honolulu's

3    compliance with the Clean Water Act and the terms of the 1995 Consent Decree.  Following

4    completion of the sewage collection system assessment, USEPA prepared an Audit Report

5    summarizing its conclusions.  Declaration of Hugh Barroll at ¶ 7.  USEPA and HDOH also

6    performed detailed inspections of the Sand Island and Honouliuli Treatment Plants to evaluate

7    compliance with the Clean Water Act and H.R.S. Chapter 342D at these facilities.  Following

8    completion of the inspections of the treatment plants, USEPA prepared Inspection Reports

9    summarizing its conclusions.  Declaration of Hugh Barroll at ¶ 7.

10    Also in 2004, Plaintiff, along with the Hawaii Chapter of the Sierra Club and Hawaii's

11    Thousand Friends (collectively the "Environmental Groups"), filed their own lawsuit against

12    Honolulu pursuant to the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365 (the

13    "2004 citizen suit").  The Environmental Groups alleged that Honolulu was not properly

14    operating and maintaining its wastewater collection system, leading to unpermitted sanitary

15    sewer overflows, and that Honolulu's discharges from the Sand Island and Honouliuli Treatment

16    Plants were not in compliance with permit requirements. See Sierra Club et al. v. City and

17    County of Honolulu, Civ. No. 04-00463 DAE (D.Haw.).  This litigation is still ongoing in the

18    U.S. District Court for the District of Hawaii before Judge Ezra, the same District Court Judge

19    with jurisdiction over the actions filed by USEPA and HDOH against Honolulu.

20    In order to comprehensively address all Honolulu's Clean Water Act violations, USEPA

21    and HDOH invited the Environmental Groups to join in negotiations with Honolulu in late 2005.

22    As part of this process, USEPA, HDOH and the Environmental Groups entered into a

23    Confidentiality Agreement in December 2005.  Exhibit 3 to Declaration of Hugh Barroll.  The

24    Confidentiality Agreement is designed to facilitate the sharing of certain written investigatory

25    materials which the parties agreed were  prepared "in anticipation of litigation."  See

26    Confidentiality Agreement, ¶ 8.   The parties also agreed that "all privileges shall be preserved"

27    and that "privileged information shall be protected from disclosure" to any third parties.

28

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1   Confidentiality Agreement, ¶ 9.  Furthermore, the Confidentiality Agreement states that the

2   parties thereto "agree to consult with each other before producing documents relating to ...

3   [Honolulu's sewage treatment] and/or its collection system and/or ... [Honolulu], whether such

4   production is made voluntarily, in response to any discovery request, or pursuant to any other

5   law of regulation."  Confidentiality Agreement, ¶ 10.  To date, the parties have not consulted, or

6   requested consultation, under this or any other provision of the Confidentiality Agreement.  The

7   Confidentiality Agreement has not been terminated according to its terms, and remains in full

8   force and effect.

9         Following execution of the Confidentiality Agreement, the United States, the State of

10  Hawaii, the Environmental Groups and Honolulu began settlement negotiations.  As part of this

11  process, USEPA shared with the Environmental Groups a number of the documents at issue in

12  this matter, subject to the terms of the Confidentiality Agreement.  This includes such documents

13  as the Audit Report of Honolulu's collection system and settlement communications discussing

14  the findings of USEPA's and HDOH's investigations of Honolulu's sewage collection system

15  and treatment plants.  Declaration of Hugh Barroll at ¶ 14.

16        In March 2006, while settlement negotiations were ongoing, Honolulu's Beachwalk

17  Force Main in Waikiki ruptured, spilling approximately 48 million gallons of sewage into the

18  Ala Wai Canal.  Declaration of Hugh Barroll at ¶ 15.  On May 8, 2007, USEPA and DOH filed

19  an additional lawsuit against Honolulu for the Clean Water Act violations related to the Beach

20  Walk Force Main spill (the "2007 lawsuit").   The 2007 lawsuit is also before Judge Ezra.  The

21  USEPA, HDOH and Honolulu simultaneously lodged a proposed Stipulated Order (Exhibit 4 to

22  the Declaration of Hugh Barroll) which was narrowly tailored to address injunctive relief claims

23  associated with the Beachwalk Force Main spill.  Declaration of Hugh Barroll at ¶ 16.  The

24  Stipulated Order was entered by the Court, over the objections of the Environmental Groups, on

25  October 10, 2007.[2]  See United States et al. v. City and County of Honolulu, CV No. 07-00235

26  _____

27        [2] As part of the United States' motion for entry of the Stipulated Order, USEPA
    submitted the *Declaration of JoAnn Cola in Support of United States' Request to Enter
28  Stipulated Order*, which Plaintiff references in its FOIA request detailed below.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1  DAE-KSC (D.Haw.).  The Court's Order entering the Stipulated Order is attached as Exhibit 7 to

2  the Declaration of Hugh Barroll.

3       In the Stipulated Order, the United States, the State of Hawaii and Honolulu

4  acknowledged that additional compliance issues needed to be resolved, and that the parties

5  intended to enter into negotiations to resolve these issues:

6       The Parties expressly recognize that the filing of the Complaint limited to these
specific claims and the filing of this Stipulated Order do not resolve and are without
7  prejudice to other claims of the Governments regarding compliance with the 1995
Consent Decree, the Act, or State law, including, but not limited to, the Governments'
8  claims for civil penalties with regard to the matters set forth in this Complaint.

9       Following entry of this Stipulated Order, the Parties intend to negotiate in good
faith a comprehensive remedy addressing all compliance issues associated with CCH's
10  wastewater system.

11  Stipulated Order at 2.  The Stipulated Order remains in effect and is under the continuing

12  jurisdiction of Judge Ezra in the District of Hawaii.  Stipulated Order at section XVI.

13       In addition to maintaining their independent enforcement action in the 2004 citizen suit

14  against Honolulu, in 2007, the Environmental Groups intervened in both the 1994 lawsuit and

15  the 2007 lawsuit.  In both cases, the Court adopted recommendations of the Magistrate imposing

16  conditions on the Environmental Groups' intervention.  The Court's Order granting the

17  Environmental Groups' motion to intervene in the 1994 lawsuit and the Magistrate Judge's

18  recommendations setting conditions on that intervention are attached as Exhibit 5 to Declaration

19  of Hugh Barroll.  The Court's Orders granting the Environmental Groups motion to intervene in

20  the 2007 lawsuit and to adopt the Magistrate's Findings and Recommendations imposing

21  conditions on intervention are attached as Exhibit 6 to the Declaration of Hugh Barroll.  The

22  Magistrate's Findings and Recommendations as to the motion to intervene in the 2007 lawsuit

23  are also attached as Exhibit 6 to the Declaration of Hugh Barroll.

24       On September 18, 2007, the Plaintiff in this action submitted a request pursuant to the

25  Freedom of Information Act for USEPA records related to the Honolulu's sewage collection and

26  treatment system and, in particular, USEPA's investigations into these facilities discussed above.

27  This request was submitted on behalf of Plaintiff by the counsel for the Environmental Groups in

28

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

the 1994, 2004 and 2007 lawsuits.  Specifically, the FOIA request sought:

> (1) [a]ll documents in EPA's possession reporting, listing, documenting and/or tabulating the discharge of raw or partially treated sewage (sometimes referred to as "sanitary sewer overflows") from ... Honolulu's ...  sanitary sewer collection system from May 1, 2004 through the final date that EPA searches its records for documents responsive to this request;

> (2) [a]ny Discharge Monitoring Reports ("DMRs") concerning the discharge of wastewater from ... [Honolulu's] ...  Sand Island wastewater treatment plant from April 2007 though the final date that EPA searches its records for documents responsive to this request; and

> (3) [a]ll documents in EPA's possession documenting, discussing, reporting or otherwise concerning the comprehensive review of ... Honolulu's ... wastewater collection system and the Sand Island and Honoulili waste water treatment plants referred to in paragraphs 6 and 7 of the *Declaration of Joann Cola in Support of United States' Request to Enter Stipulated Order* filed in *United States et al. v. City and County of Honolulu*, Civ. No. 07-00235 DAE-KSC.[3]

The Declaration of JoAnn Cola referenced above is attached as Exhibit 8 to the Declaration of Hugh Barroll.

USEPA released a substantial number of documents pursuant to this FOIA request. USEPA is withholding no documents responsive to the second category of documents. However, USEPA withheld from release a number of documents responsive to the first and third categories of documents sought on the grounds that their release would reveal attorney work product, would reveal attorney-client communications, and/or would interfere with enforcement proceedings.  Documents that would disclose attorney work product or attorney-client communications are exempt from disclosure pursuant to FOIA Exemption 5.  5 U.S.C. § 552(b)(5).  Documents which would interfere with enforcement proceedings are exempt from disclosure pursuant to FOIA Exemption 7(A).  5 U.S.C. § 552(b)(7)(A).  Following an appeal to USEPA Headquarters, which upheld the decision to withhold the documents at issue here, Plaintiff filed this action.

---

[3]  The Declaration of JoAnn Cola  referenced in this document request referred to USEPA's investigations into the Honolulu's sewage collection system and treatment plants in 2004 and 2005 discussed above. See footnote 2.  Ms. Cola is the EPA inspector with primary responsibility for oversight of Honolulu's sewage system, and its compliance with the Clean Water Act.

1    **III. LEGAL STANDARD.**

2       A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which allows a district

3    court, for the convenience of parties and witnesses, and in the interest of justice, to transfer any

4    civil action to any other district or division where it might have been brought.  Because the broad

5    federal venue statutes often result in inconvenient forums, Congress intended section 1404(a) to

6    remedy this situation by authorizing the transfer of actions to a more convenient forum.  <u>Ferrens</u>

7    <u>v. John Deere Co.</u>, 494 U.S. 516, 522 (1990).  Section 1404(a) was designed to protect litigants,

8    witnesses and the public against unnecessary inconvenience and expense,  <u>Van Dusen v.</u>

9    <u>Barrack</u>, 376 U.S. 612, 616 (1964), and to ensure "systemic integrity and fairness" in the judicial

10   process,  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 30 (1988), and the "efficient

11   administration of the court system."  <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 220-21 (7th

12   Cir. 1989).  The decision as to whether transfer is appropriate under 1404(a) "involves subtle

13   considerations" that are best left to the broad discretion of the district court.  <u>Ventress v. Japan</u>

14   <u>Airlines</u>, 486 F.3d 1111, 1118 (9th Cir. 2007)(citation omitted).

15       As a threshold matter, the Court must determine if the action subject to the motion to

16   transfer "might have been brought" by the Plaintiff in the transferee district (i.e., the district to

17   which the moving party seeks to transfer the action).  <u>Hoffman v. Blaski</u>, 363 U.S. 335, 343-44

18   (1960).  Next, the Court must determine if the transfer would serve "the interest of justice" and

19   "the convenience of parties and witnesses."  In making this determination, the Court may

20   consider: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) the witnesses'

21   convenience; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable

22   law; (6) the feasibility of consolidation with other claims; (7) any local interest in the

23   controversy; and (8) the relative court congestion and time to trial in each forum.  <u>Jones v. GNC</u>

24   <u>Franchising</u>, 211 F.3d 495, 498-99 (9th Cir. 2000).

25       The moving party bears the burden of showing that the balance of conveniences weighs

26   heavily in favor of transfer in order to overcome the strong presumption in favor of the plaintiff's

27   choice of forum.  <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 843 (9th Cir.

28

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1986).  But a plaintiff's choice of forum is entitled only to minimal consideration if the operative

facts have not occurred within the forum of original selection and that forum has no particular

interest in the parties or the subject matter of the litigation.  <u>Pacific Car & Foundry Co. v. Pence</u>,

403 F.2d 949, 954 (9th Cir. 1968).

**IV.  DISCUSSION.**

   Plaintiff did not oppose, and therefore conceded, Defendants' arguments that transfer to

the District of Hawaii would serve the interest of justice, the convenience of parties and

witnesses, and all other relevant factors.[4]  In fact, Plaintiff expressly waived any objection to

transferring venue as long as jurisdiction would be proper.  Opp. Mem. at 5.  The only question

Plaintiff raised was whether jurisdiction in the District of Hawaii would be proper.  Jurisdiction

would be proper for three reasons: first, jurisdiction is established under the federal question

statute, 28 U.S.C. § 1331, because this FOIA action arises under a law of the United States;

second, the statute Plaintiff relies on, 5 U.S.C. § 552(a)(4)(B), is a venue provision, not a

jurisdictional one, and Plaintiff has waived any objection to venue; and third, even if

§552(a)(4)(B) could be said to govern jurisdiction over original actions, Plaintiff's complaint

qualifies for transfer to the District of Hawaii because the case "might have been brought" as a

crossclaim to an existing action in Hawaii.

   **A.  SECTION 552(a)(4)(B) ESTABLISHES VENUE, NOT JURISDICTION.**

   Plaintiff argues that § 552(a)(4)(B) grants subject matter jurisdiction rather than venue to

specific district courts, and that the District of Hawaii would not have jurisdiction to hear the

instant FOIA claim under that statute.  Although it appears to be an issue of first impression in

---

   [4]  Plaintiff asserts that the documents at issue have some connection to the instant
forum, Opp. Mem. at 4, but does not refute or oppose any of Defendants' arguments that the
documents concern the U.S. Environmental Protection Agency's investigation of Honolulu's
compliance with the Clean Water Act, which is of direct concern to the citizens of Hawaii, Mot.
at 15-16.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

the Ninth Circuit,[5] one district court has expressly analyzed the issue and concluded that in FOIA

cases, jurisdiction is established under 28 U.S.C. § 1331[6] because the subject matter presents a

federal question, while venue is established under § 552(a)(4)(B):

> Subject matter jurisdiction, venue, personal jurisdiction and service of process are related but independent concepts and all four requirements must be satisfied in every case. See 4 Wright & Miller, Federal Practice and Procedure § 1063 at 329 (2002). In the present case, the docket indicates that service of process and personal jurisdiction have been satisfied. **Subject matter jurisdiction has been established because the FOIA presents a federal question under 28 U.S.C. § 1331.** Thus, the only remaining question is whether venue is proper in the Eastern District of Wisconsin.

> As to venue, the FOIA provides,

> On complaint, the district court of the United States in the district in which the complainant resides, or has principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).

> **Section 552(a)(4)(B) is a venue provision statute and not a jurisdiction conferring statute.** Jones v. United States Nuclear Regulatory Comm'n, 654 F. Supp. 130 (D.D.C. 1987). Venue for an FOIA claim is proper in any district in which the complainant resides or has its principal place of business, the district in which the records are situated, or in the District of Columbia. In re Scott, 228

---

[5]      The Ninth Circuit cases cited by Plaintiff, Opp. Mem. at 3, do not address the issue raised here.  Spurlock v. Federal Bureau of Investigation, 69 F.3d 1010 (9th Cir. 1995), addressed whether the FBI had to disclose documents that the district court had already determined to be exempt under FOIA, and did not concern venue at all.  Similarly, Cal-Almond v. U.S. Dep't of Agriculture, 960 F.2d 105 (9th Cir. 1992), discussed whether the Department of Agriculture's lists of almond growers were properly exempt from disclosure under FOIA, and did not address venue.

        Nor did Baizer v. U.S. Dep't of the Air Force, 887 F. Supp. 225 (N.D. Cal. 1995), address venue.  In that case, Judge Smith stated that "[u]nder 5 U.S.C. § 552(a)(4)(B), federal subject matter jurisdiction in a FOIA case is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"  Id. at 226-27 (citation omitted).  Judge Smith concluded that Supreme Court opinions stored in an Air Force computer database are not "agency records" and do not have to be disclosed under FOIA.  Id. at 229.

[6]      28 U.S.C. § 1331 states in its entirety, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1  U.S. App. D.C. 278, 709 F.2d 717, 720 (D.C. App. 1983).

2  O'Neill v. United States Dep't of Justice, 2007 WL 983143, slip op. at *6 (E.D. Wis. 2007)

3  (emphasis added).

4  Consistent with this analysis, district courts within the Ninth Circuit have described

5  § 552(a)(4)(B) as a venue provision.  For example, this very court stated that "**venue** is not

6  proper in this district" when the requirements of § 552(a)(4)(B) were not satisfied because the

7  plaintiff resided in Kansas and the records were located in Washington, D.C. and Hawaii.  Keen

8  v. Federal Bureau of Investigation, 1997 WL 671711, *1 (N.D. Cal. 1997) (emphasis added).

9  Likewise, the district court for the District of Arizona described section 552(a)(4)(B) as "[t]he

10  FOIA **venue** provision." Haswell v. Nat'l R.R. Passenger Corp., 2006 WL 839067, slip op. at *1

11  (D. Ariz. 2006) (emphasis added).

12  In support of its position, Plaintiff cites two cases from the district court for the District

13  of Columbia decided in the 1980s.  See Opp. Mem. at 4.[7]  More recently, however, that court has

14  stated that "[u]nder the FOIA **venue** statute, 5 U.S.C. 552(a)(4)(B), **venue** is always proper in

15  the District of Columbia."  Boggs v. United States, 987 F. Supp. 11, 18 n.4 (D.D.C. 1997)

16  (emphasis added)**.**  Moreover, the United States Court of Appeals for the District of Columbia

17  has characterized the FOIA section as a venue statute in at least two published decisions.  See

18  Lykins v. United States Dep't of Justice, 725 F.2d 1455, 1462 n.7 (D.C. Cir. 1984) (stating that

19  "Congress explicitly laid venue in FOIA cases" in the courts outlined in § 552(a)(4)(B));

20  In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983) (describing § 552(a)(4)(B) as "the applicable

21  FOIA venue provision"); accord Banks v. Partyka, 2007 WL 2693180, slip op. at *5 (W.D. Okla.

22  2007) ("Under both FOIA and the Privacy Act, venue is proper in the district where claimant

23  resides, in the district where agency records are situated, or in the District of Columbia.").  These

24  holdings of the D.C. Court of Appeals and the recent holding of the D.C. district court in Boggs

25

26  [7]  Plaintiff also cites Weber v. Coney, 642 F.2d 91, 93 (5th Cir. 1981), but that case

27  addressed the question of whether a case was properly transferred between two divisions of the same district, not, as here, whether a case may be properly transferred between two different

28  districts.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1   are entitled to appropriate deference.  See Scott, 709 F.2d at 720 (noting that Congress believed

2   District of Columbia courts had "substantial expertise in working with the FOIA") (internal

3   quotations omitted); Matlack, Inc. v. U.S. EPA, 868 F. Supp. 627, 630 & n.3 (D. Del. 1994)

4   (noting that the federal courts in the District of Columbia have "long been on the leading edge"

5   of interpreting the FOIA).  In conclusion, because this FOIA action arises under a federal statute,

6   jurisdiction is proper in either the Northern District of California or the District of Hawaii.

### B.   REGARDLESS OF WHETHER SECTION 552(a)(4)(B) CONFERS JURISDICTION OR VENUE, TRANSFER TO HAWAII IS PROPER BECAUSE PLAINTIFF'S FOIA CLAIM COULD HAVE BEEN BROUGHT AS A CROSSCLAIM THERE.

Even if § 552(a)(4)(B) was deemed to govern jurisdiction as to original actions filed

under FOIA, original jurisdiction is not required for purposes of transfer.  As Defendants

explained in their motion at 11, there are two methods by which a case "might have been

brought" in a district for purposes of transfer: (1) if original jurisdiction would have existed in

the transferee district (citing Hoffman v. Blaski, 363 U.S. 335, 344 (1960)), or (2) if the case

could have been filed as a claim in an existing action in the transferee district (citing A.J. Indus.,

Inc. v. U.S. Dist. Court for the Central Dist. of Cal., 503 F.2d 384, 387 (9th Cir. 1974)).  Plaintiff

did not specifically oppose this two-method test in its opposition memo or proffer any law or

argument as to why this test is not good law, and therefore conceded the test.

Nevertheless, Plaintiff asserts that transfer to Hawaii would be improper because original

jurisdiction could not exist there, stating erroneously that "28 U.S.C. § 1404(a) only allows a

transfers (sic) to district courts where a Plaintiff's complaint could have originally been filed."

Opp. Mem. at 2.  Plaintiff offers no legal support for this assertion, which is clearly wrong in

light of the two-method test stated above that is the product of binding Supreme Court and Ninth

Circuit authority.  The practical effect of accepting Plaintiff's assertion would be to eliminate

from the test the second basis for jurisdiction (allowing transfer if a case could have been filed as

a claim in an existing action), thereby overruling controlling Ninth Circuit precedent under A.J.

Indus.  This court declines Plaintiff's attempt to circumvent the Ninth Circuit's holding in A.J.

Indus. through the back door.

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA

1    The two-method test remains good law, and under that test, even if original jurisdiction

2 did not lie in the District of Hawaii under § 552(a)(4)(B), the instant case could have been filed

3 as a crossclaim in lawsuits commenced in the District of Hawaii by the U.S. Environmental

4 Protection Agency in 1994 and 2007 in which OCE intervened.  See Mot. at 12.  Plaintiff did not

5 specifically analyze or refute any of Defendants' arguments as to why OCE could have brought

6 the instant action as a crossclaim in Hawaii, beyond Plaintiff's generalized assertion that §

7 552(a)(4)(B) is a jurisdictional statute.

8    Finally, § 552(a)(4)(B) nowhere states that the jurisdiction it confers (if any) is conferred

9 to the exclusion of other federal statutes or rules such as § 1331, § 1404(a), Rule 13(g) (allowing

10 for crossclaims against a coparty), or Rule 15(d) (allowing for supplemental pleadings).  Nor

11 does Plaintiff cite any case holding this.  Thus, even if § 552(a)(4)(B) confers jurisdiction rather

12 than addresses venue, transfer would still be proper because the instant action could have been

13 brought as a crossclaim in the District of Hawaii.

14 **III.   CONCLUSION**

15    For the foregoing reasons, the court GRANTS Defendants' Motion to Transfer Venue to

16 the District of Hawaii and ORDERS the clerk of court to transfer this case to the District of

17 Hawaii.

18    IT IS SO ORDERED.

19

20

21

22 DATED: 8/1/08

HON. SAUNDRA B. ARMSTRONG
United States District Judge

23

24

25

26

27

28

DEFS.' [PROPOSED] ORDER GRANTING MOT. TO TRANSFER VENUE TO D. HAW.
C 08-1461 SBA